UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO; 13-80045-CR-MARRA

UNITED STATES of AMERICA,
    Plaintiff,

v.

SALITA ST. SIMON,
    Defendant.
_____ /

### DEFENDANT'S OBJECTIONS TO THE PRESENTENCE REPORT

The Defendant, Salita St. Simon, by and through undersigned counsel, pursuant to Rule 32(i) of the Federal Rules of Criminal Procedure, Administrative Orders 95-02; 90-26 and U.S.S.G §6A1.3, respectfully files the following objections and clarifications to the Presentence Report (PSR) and in support states;

1. **At page 3**, the last four digit's of the Defendant's social security number should read XXX-XX-8576. The first 5 digits are correct.

2. **The Offense Conduct;** The Defendant plead guilty to counts I, II & VIII of the Indictment. Count I charges the Defendant with conspiracy to defraud the government with respect to claim, in violation of 18 USC § 268. The Indictment alleges the defendant willfully conspired to defraud the IRS by aiding to obtain the payment of fraudulent claims. Her conduct in this regard (which is consistent in each count of conviction) was that the defendant obtained patient identification information (PII), including name, social security number, date of birth and / or medical file number from the computer system at the PBCHD. The Indictment further

1

alleges that the purpose of the conspiracy was for the conspirators to unjustly enrich themselves by submitting false tax returns to the IRS.

Count II charges the defendant with conspiracy to obtain and disclose individually identifiable health information, in violation of 18 USC § 371.  The Indictment alleges the purpose of the conspiracy was for the conspirators to unjustly enrich themselves by using personal identification information to submit fraudulent tax returns to the IRS.  The manner in which the conspiracy was carried out is the same as count I.  The defendant's criminal conduct subject of this count is the same, in that the defendant provided PII of PBCHD patients to co-conspirators who in turn filed fraudulent tax returns with the IRS.

Count VIII charges the defendant with a substantive count of obtaining individually identifiable health information, in violation of 42 USC § 1320d-6(a)(2).  The offense conduct for this count is similar to the previously alleged conduct in both counts I & II.  Count VIII charges a specific individual (J.C.) whose personal health information was obtained.  This individual (J.C.) appears on one of the lists generated by the defendant and provided to law enforcement as evidence, however J.C.'s information was not used to submit a fraudulent tax return.

The investigation suggests that between March and June 2012, fourteen (14) tax refunds were submitted into a bank account controlled by co-conspirator Bennette and his girlfriend.  These 14 refunds were in the names of PBCHD patients or former patients.  The first 2 refunds were for $1,269.10 dollars and the remaining 12 refunds were in the amount of $1,450 dollars.  The total tax loss suffered by the IRS was $19,896.20 dollars.  Although the Defendant knew the object of the conspiracy was for her co-conspirators to submit false tax returns to the IRS, there is no evidence to suggest that the defendant did anything to further assist the conspiracy outside of

2

obtaining the names from her computer and providing the PII to her co-conspirators.  Further, the defendant did not share in the profits of any fraudulent return with her co-conspirators.  The evidence suggests that the Defendant received nominal amounts of monies such as $50 dollars to put gas in her car or pay her light bill.  These payments were minimal and seldom received.

     3. **At paragraph 3, on page 4;** Probation is correct that the defendant has been in compliance with all conditions of her release including mental health treatment.  The defendant was first referred to the Comprehensive Alcoholism Rehabilitation Programs, Inc., (CARP) for counseling and treatment.  After it became apparent the defendant did not have a substance abuse issue, she was referred to the Jerome Golden Center for a mental health assessment and treatment. The Defendant has been seen on a weekly basis at Jerome Golden.  Her treatment has been designed to address the defendant's depression, anxiety, low self esteem and re-occurring panic attacks.  The records at Jerome Golden indicate suicidal ideation however the patient denies having any plan to commit suicide.  While on pretrial release the defendant was admitted to Lakeside Medical Center twice for depression and anxiety.  The Jerome Golden records indicate the defendant was previously prescribed Paxil for depression.

     4. **At paragraph 8, on page 5**; Probation accurately states that the defendant immediately cooperated with authorities when confronted with the first list of patient information found at her desk on January 22, 2013.  The PSI indicates the defendant gave "several people" information.  It should be noted that the five names listed in paragraph 8 are the only people that were provided PII by the defendant.  The defendant offered to assist the government in any prosecution of those individuals, however the government was not interested in her cooperation.

5. **At paragraph 9, on page 5;** Probation correctly points out that the defendant received small amounts of money such $50 or $80 dollars from one of the co-conspirators.  The defendant told investigators these payments were limited in number and for personal expenses such gas for her car or to pay utility bills at home.  The defendant did not receive any profits from the tax scheme or fraudulent refunds obtained by the co-conspirators.  The defendant did not financially profit from her criminal conduct and was not motivated to commit this crime by greed or to live a lavish lifestyle.

6. **At paragraph 12, on page 5;** Probation states that the list found on the defendant's desk at work contained information she had planned to "sell" to her co-conspirators.  The defendant objects to the use of the term "sell".  There is no evidence to suggest that the defendant sold any of the information taken from PBCHD during the course of the conspiracy.  Any information obtained by the defendant was given to co-conspirators without any charge or fee taken in return.

7. **At paragraph 16, on page 6;** Probation indicates that a forensic analysis on the hard drive of the defendant's work computer was performed and two deleted files were found to contain an additional 594 social security numbers.  Probation also states that the FBI was unable to determine when these two files were created or deleted.  As of this writing, the government has not provided any FBI forensic report in discovery.  The defendant objects to these additional social security numbers being factored into any guideline computation.  Probation has included the additional 594 social security numbers within their loss calculation (pursuant to U.S.S.G. § 2B1.1 comment (n.3(F)(i)) for guideline purposes at a rate of $500.00 dollars per social security number.

8. **At paragraph 19, on page 7;** Probation indicates that the IRS analyzed returns filed in 2011 and 2012 in the names found on the work computer. According to Probation, 70 returns were flagged for fraud, however the IRS could not determine if the returns were actually fraudulent or if the defendant or any co-conspirator were involved in the filing of the return. Because these returns cannot be deem fraudulent, the defendant objects to this information being considered and would ask the paragraph be deleted from the PSI.

9. **Offense Level Computation:**

It is the job of every sentencing judge to evaluate each person and set of facts as unique and recognize that each may not fit neatly within the confining rubric of the formulaic sentencing guidelines. The importance of this duty is being fully realized in the years since the guidelines became advisory and the "range of choice dictated by facts of each case [has been] significantly broadened". *Gall v. United States*, 128 S.Ct. 586, 598(1996)(quoting *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)). Because the purpose of the conspiracy was to defraud the IRS with respect to fraudulent returns and not Identity Theft, the defendant believes the appropriate guideline for any loss calculation is U.S.S.G. § 2T1.4 and objects to Probation's use of U.S.S.G. § 2B1.1. The defendant believes this guideline more appropriately addresses the facts and evidence of the case and the resulting guideline range more accurately reflects the actual harm caused by the defendant.

Should the court agree, the base offense level would correspond to the total tax loss suffered by the IRS. The evidence suggests the actual loss to the IRS is $19,896.20 dollars which calls for an offense level of 12 pursuant to the tax table (U.S.S.G. § 2T4.1). Without any other applicable sentencing characteristic and a reduction for acceptance, the defendant's offense level

would be 8 resulting in an advisory guideline of 6-12 months imprisonment.  The defendant has no criminal history points.

The defendant believes the use of U.S.S.G. § 2B1.1 is not appropriate for this tax scheme and if considered significantly over-represents the harm and results in an otherwise unreasonable advisory guideline range.  Should the Court believe Probation is correct in the application of § 2B1.1, the defendant would object to Probation's conclusion that PII for 1,858 people were stolen by the Defendant.  At most, the evidence shows that the defendant obtained PII for 1,250 people, none of which were actually used to obtain false tax returns.  That number includes the PII for the people contained on the lists found at the defendant's home and at her work station.

It appears in calculating the total loss amount, Probation relies on U.S.S.G. § 2B1.1, comment (n.3(F)(i)),which calls for a rate of $500.00 dollars per "access device".  The defendant objects to use of this application note and believes that the social security numbers obtained in this case are not the type of "access device" contemplated by this guideline.  This is not an Identity Theft case.  A plain reading of the application note indicates that it is to be used in cases dealing with Stolen or Counterfeit Credit Cards and Access Devices.  The first portion of the guideline note directs that the loss shall include any unauthorized "charges" made with the counterfeit access device or unauthorized access device and shall not be less than $500 dollars per access device.  This case does not deal with any stolen or counterfeit credit cards or an "access device" that can be used alone or in conjuncture with any other "access device" to purchase anything of value as the application note suggests.

It appears Probation is relying on the term "access device" as defined in 18 USC § 1029(e)(1) in application of this guideline.  However, this case involves fraudulently obtained

social security numbers and those social security numbers were not used alone or in conjuncture with another access device to purchase goods or services as the guideline directs. The evidence suggests that the social security numbers were used alone to submit fraudulent tax returns and defraud the IRS. Understanding that a social security number can be defined as an "access device", the defense believes under the facts of this case, a social security number alone is not an "access device" as contemplated by this application note within the guidelines. See *United States v. Gilmore*, 2011WL2623676 (C.A.6 Tenn.).

Should the Court apply U.S.S.G. § 2B1.1, the defendant would also object to the 2 level enhancement for the number of victims in the instant offense. Understanding that 14 tax refunds were issued by the IRS, the names and social security numbers used to file the fraudulent returns were not on any of the lists obtained by the defendant or provided to any co-defendant.

10. **At paragraphs 82 & 83; Grounds for Departure;**

The defendant believes that the instant offense is the result of her otherwise "aberrant behavior" which is an appropriate ground for departure from the guideline range pursuant to U.S.S.G. § 5K2.20. Such a departure is permissible in an extraordinary case if the defendant's criminal conduct constituted aberrant behavior. *U.S.S.G. § 5K2.20 (2002) (emphasis added)*. But, such a departure is not permissible if "(1) the offense involved serious bodily injury or death; (2) the defendant discharged a firearm or otherwise used a firearm or a dangerous weapon; (3) the instant offense of conviction is a serious drug trafficking offense; (4) the defendant has more than one criminal history point ...; or (5) the defendant has a prior ... conviction." *Id*. Thus, in order to qualify for an "aberrant behavior" departure, (1) the case must be "extraordinary," (2) the defendant's conduct must constitute "aberrant behavior," and (3) the defendant cannot be

disqualified by any of the five listed factors. It appears that the defendant's case meets the criteria set forth above.

A defendant's conduct is aberrant behavior if that conduct constitutes a "single criminal occurrence or single criminal transaction that (A) was committed without significant planning; (B) was of limited duration; and (C) represents a marked deviation by the defendant from an otherwise law-abiding life." *U.S.S.G. § 5K2.20, cmt. n. 1 (2013)*. In addition, when determining whether it should depart on the basis of aberrant behavior, the district court "may consider the defendant's (A) mental and emotional conditions; (B) employment record; (C) record of prior good works; (D) motivation for committing the offense; and (E) efforts to mitigate the effects of the offense." *U.S.S.G. § 5K2.20, cmt. n. 2 (2013)*.

The Sentencing Commission stated it "intends that the phrases 'single criminal occurrence' and 'single criminal transaction' will be somewhat broader than 'single act,' but will be limited in potential applicability to offenses (1) committed without significant planning; (2) of limited duration; and (3) that represent a marked deviation by the defendant from an otherwise law-abiding life." *U.S.S.G. Supp. to App. C., cmt. to amend. 603 at 77 (2013)*. The defendant believes this is an appropriate ground for departure under the facts of this case.

11. **Role Assessment;**

A defendant is a minor participant if he / she is less culpable than most other participants, but whose role cannot be described as minimal. *U.S.S.G. § 3B1.2, comment. (n. 3)*. In determining a defendant's mitigating role in the offense, the district court "must measure the defendant's role against the relevant conduct for which [she] was held accountable at sentencing ... [and] may also measure the defendant's role against the other participants ... in the relevant

conduct." *United States v. De Varon*, 175 F.3d 930, 945 (11th Cir.1999). "The defendant bears the burden of proving his minor role by a preponderance of the evidence." *De Varon*, 175 F.3d at 937 (11th Cir.1999); See also *United States v. Boyd*, 291 F.3d 1274, 1277 (11th Cir.2002).

Both the Guidelines and the relevant statutory language also explicitly recognize that a district court's determination of a defendant's role in the offense is essentially factual and that such findings must be afforded deference. The commentary to the Guidelines state that the determination of a mitigating role in the offense "is heavily dependent upon the facts of the particular case." *U.S.S.G. § 3B1.2, comment*. Notwithstanding the 11th Circuit's deference to the district court's discretion in this uniquely fact-intensive inquiry, the district court's ultimate determination of the defendant's role in the offense should be informed by two principles discerned from the Guidelines: first, the defendant's role in the relevant conduct for which she has been held accountable at sentencing, and, second, her role as compared to that of other participants in her relevant conduct. *De Varon*, 175 F.3d at 945.

When applying this two step inquiry to the fact of our case, the Court should find the defendant role in the instant offense was minor. Understanding it could be argued that the defendant's conduct was important to the function of the conspiracy, that in and of itself should not outweigh the fact that the defendant played a lesser role in the overall conspiracy when compared to the other co-conspirators. The evidence suggests that the defendant was not a decision maker nor assisted in any planning to otherwise complete the object of the conspiracy. The defendant did not possess any supervisory responsibilities in the crime or over any other person and did not have input in any decision regarding the filing of the fraudulent tax returns. The evidence suggests the defendant did what was asked of her and that was to obtain the names

9

and personal identification information of patients so her co-conspirators could profit by obtaining fraudulent IRS refunds.

                                Respectfully submitted;
                                *s/; Peter T. Patanzo*
                                Peter T. Patanzo, Esq.
                                Benjamin, Aaronson & Patanzo, PA
                                1 Financial Plaza, suite 1615
                                Fort Lauderdale, Florida 33394
                                (954) 779-1700 phone
                                (954) 779-1771 fax
                                ppatanzo@bellsouth.net
                                Counsel for Salita St. Simon

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been uploaded to CM / ECF and served on all those associated with the electronic filing system this ____ day of February, 2014.

                                *s/; Peter T. Patanzo*
                                Peter T. Patanzo, Esq.