# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO; 13-80045-CR-MARRA

**UNITED STATES of AMERICA,**
        **Plaintiff,**

v.

**SALITA ST. SIMON,**
        **Defendant.**
_____ /

### SENTENCING MEMORANDUM

COMES NOW, the Defendant, Salita St. Simon, by and through undersigned counsel, Peter T. Patanzo, Esq., and the Law Offices of Benjamin, Aaronson, Edinger & Patanzo, PA, pursuant to 18 USC § 3553, 18 USC § 3661 and Rule 32(i)of the Federal Rules of Criminal Procedure, respectfully present the following information for the Court to consider when determining a reasonable sentence in this case.

Sentencing is governed by 18 USC § 3553(a).  The overriding principle and basic mandate of Section § 3553(a) requires the district courts to impose a sentence "sufficient but not greater than necessary", to comply with the four (4) purposes of sentencing set forth in Section § 3553(a)(2)-, retribution, deterrence, incapacitation and rehabilitation.

1.      **Introduction;**

As an initial matter, the defendant has pled guilty, accepted responsibility and acknowledges her guilt in the instant offense.  Ms. St. Simon accepts responsibility for her conduct while employed by the Palm Beach County Health Department (PBCHD) and

1

understands that the offense requires the appropriate attention of this Court.  The defendant stands before the Court in more trouble than she has ever imagined possible.  The Defendant is 31 years of age, with no prior record facing a possible term of imprisonment.  The Defendant recognizes she has embarrassed herself and humiliated her family through her conduct.  We believe the Court will find after consideration of the appropriate factors that, Salita has fully accepted responsibility for her actions, is remorseful, and through this process has achieved substantial rehabilitation such that she will never again violate the law.

The defendant is remorseful and contrite.  She has attempted to repay society already by waiving many substantial rights, admitting her conduct and pleading guilty.  These actions have assisted the government and the judiciary through facilitating the administration of justice without the need of a trial or expending substantial resources.  The Defendant wishes to repay society further through completing any sentence imposed by the Court and successfully completing all general or special conditions of that sentence thereby achieving total rehabilitation.

### A.    <u>Sentencing after Booker, Gall and Kimbrough</u>;

In *United States v. Booker*, 125 S.Ct. 738 (2005), the Supreme Court held that the sentencing guidelines are advisory only, not mandatory.  Nevertheless, the 11th Circuit has directed that district courts must still consider the guidelines in determining a defendant's sentence and therefore requires the Court to correctly calculate the guidelines.  See *United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005).  Although under *Booker*, the sentencing guidelines are an advisory rather than mandatory regime, the district court remains obliged to "consult" and "take into account" the guidelines in sentencing.  This consultation requirement, at

a minimum obliges the district court to calculate the sentencing range and consider that range as well as all the other factors pursuant to Section § 3553(a) prior to imposing what the Court deems a reasonable sentence. The district court is now free to impose a sentence below, within or above the calculated guideline range and is only required to impose a sentence that is "sufficient but not greater than necessary" to achieve the purposes of sentencing.

In *Pepper v. United States*, 131 S.Ct. 1229 (2011), the United States Supreme Court emphasized the need for individualized sentencing based not only on the crime but on the defendant with the primary sentencing mandate being that sentencing courts must impose a "minimally sufficient" sentence to achieve the purposes of sentencing set forth in Section § 3553(a)(2)-, retribution, deterrence, incapacitation and rehabilitation. The Supreme Court has held that the factors set forth in 18 USC § 3553(a) must be considered in fashioning the appropriate sentence. These factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed– (A) to reflect the seriousness of the offense; (B) to afford adequate deterrence to criminal conduct; ©) to protect the public from further crimes of the defendant; and (D) to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the advisory guideline range; (5) any pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims of the offense. *Booker*, 125 S.Ct. at 764; See also *Gall v. United States*, 552 U.S. 38 (2007); and *Kimbrough v. United States*, 552 U.S. 85 (2007).

The duties of the parties however do not cease upon conviction of the defendant. While

sentencing is a function of the court, the attorneys nevertheless have a duty to assist the Court in as helpful a manner as possible. *ABA Project on Standards for Criminal Justice: Sentencing Procedures, § 18-6.3, "Duties of Counsel"*. In that regard, the defendant writes to discuss the § 3553(a) factors as they relate to this defendant.

      **B.**      **History and Characteristics;**

Salita is the natural child of Bertoni St. Simon and Getha Felix born and raised in the Pahokee / Belle Glade area of Florida. The defendant's parents were never married. The defendant has six older siblings who were not raised with her. The defendant was raised primarily by her mother in a lower socio-economic family. After the separation of her biological parents, the defendant did not have much contact with her biological father and he did not provide any financial support. Although not having a father figure in her life, the defendant's mother provided the necessary guidance and support throughout Salita's life and stands by her today as she faces the consequences of her actions. The defendant has never been arrested or had contact with the criminal justice system.

Salita reports a difficult time growing up. Although not abused by her parents, it was reported that her parents used corporal punishment as a means of discipline. Salita grew up a considerably quiet and shy individual, who was often bullied in school. Salita's early education was not a consistent or stable environment. The defendant bounced around from school to school however was able to complete her high school education. A review of public school records indicate she attended Palm Beach County Schools until 2001, where she earned a certificate of completion. Salita subsequently attended Oxford Academy, a correspondence school in Broward County and earned her high school degree. The defendant earned an

associates degree from Palm Beach Community College in 2004 after four years.  In an effort to further her education, Salita left the Belle Glade area for the first time in her life and attended the University of Central Florida in Orlando during the 2005-06 school year.  Despite having completed her high school education, the defendant has not experienced much of life outside the Belle Glade / Pahokee area.  The defendant has never lived outside the Belle Glade area for any substantial time.

The defendant was unable to complete her education at UCF.  The experience away from home for the first time proved to be a tramatic experience in her life.  Salita was the victim of a sexual assault on the UCF campus.  She did not know the perpetrator of this crime and the police did not prosecute.  It is reasonable to believe this event has contributed to Salita's present mental health condition and need for psychological treatment.  After this event, Salita attended counseling at UCF however left campus shortly thereafter returning to Belle Glade.  The defendant did not seek further psychological treatment upon returning home until after her arrest in the instant case as a condition of her release.

After returning to Belle Glade, Salita withdrew from the general public and daily activities. Salita was afraid to leave home, to work, go to school or socialize with friends.  The defendant periodically received counseling at her church in Belle Glade.  After about a year and half, Salita began to venture from the home and began normal daily activities.  Salita found comfort in a personal relationship with Emmanuel Joseph someone known to her growing up. This relationship lasted a couple of years.  Mr. Joseph is one of the co-conspirators who's role in this conspiracy was to assist the filing of false tax returns with the IRS.  During their relationship Salita became pregnant with Mr. Joseph's child, however in August 2012 the child was still born.

That relationship continued for several months after this event however it ended shortly after Salita's arrest in the instant offense.  Since her relationship with Mr. Joseph, Salita began a casual relationship with a person in Belle Glade.  The defendant became pregnant during this relationship, however the pregnancy was terminated due to a miscarriage.  It is reasonable to believe the stress of the current situation as well as her depression and anxiety contributed to the miscarriage of this child.  The defendant is presently single and unemployed.  Salita is doing what she can to contribute to the household and otherwise assist her mother in maintaining the home.

Prior to her arrest in the instant case, Salita worked as a clerk at the PBCHD.  The defendant was so employed for approximately 4 and half years and reached the position as a senior clerk.  Outside of the offense conduct in the instant matter, Salita was successful at her job and was a well liked employee among her co-workers.  Prior to her employment at the Health Department, Salita maintained full time employment at Farmworker Coordinating Council in Belle Glade where she was a case manager.  As a case manager, the defendant's responsibilities included the initial intake which required the obtaining people's personal identification information, including social security numbers for the files.  The defendant handling of PII at this job was never a concern.  The defendant left voluntarily to attend school.  The defendant also worked for Workforce Alliance in Belle Glade without any concern.

Salita was ordered to attend and complete treatment as a condition of her release in the instant offense.  The defendant was first ordered to attend substance abuse treatment at CARP in Belle Glade.  While at CARP, the treatment providers determined the defendant did not have a substance abuse issue however because of Salita's depression, she was referred for mental health

treatment.  In August, 2013, Salita began treatment at the Jerome Golden Center in South Bay, Florida where she has been participating in weekly treatment.  While on release, Salita has been hospitalized at Lakeside Medical Center in Belle Glade on two occasions.  Both admissions were for depression and anxiety.  The defendant reports no substance abuse problems and has tested negative in all random drug screens

Presently, Salita lives in a small two bedroom apartment located at 256 S.W. Avenue B, #3, Belle Glade, Florida with her mother and 45 year old brother Nathan Benoit who works as a corrections officer.  The defendant's mother has been a source of inspiration in her life and someone who has provided the necessary support during the difficult times during the instant case.  The defendant's mother will continue to provide support for her daughter during the remainder of this case and after any sentence is completed.  Since the defendant's arrest in the instant offense she has been unemployed.  Despite looking for work, Salita has been unable to find employment while on release status in this case.

### C.   The Need for Just Punishment;

Understanding that the offense is serious, just punishment can be achieved through a minimally sufficient sentence after consideration of the factors set forth in section § 3553(a), specifically the defendant's history and characteristics, the good she has done in her life and more importantly the unlikelihood for her to re-offend.  While deterrence is a factor to consider pursuant to § 3553(a), the question becomes, to what extent can any court truly deter the conduct of others through a term of imprisonment ?  Is this such a case or such a set of facts that requires the need to make an example out of this defendant and impose a significant prison sentence ?

After an analysis of the factors set forth in § 3553(a), including but not limited to the

history and characteristics of this defendant, the court can absolutely be assured that this process has effected this defendant in a manner that will deter this defendant from ever committing a crime ever again.  The defendant has been the subject of this investigation and questioned by investigators which resulted in her arrest and indictment for her conduct.  This process has jeopardized her livelihood, her employability and moving forward her ability to assist her family because she is facing a possible term of imprisonment and will be a convicted felon in a theft related offense.  Since her release after arrest, she has successfully completed all conditions of pretrial release.  Throughout this process the defendant has reflected on her conduct.  Through treatment and counseling Salita has reflected on her behavior, motivations for committing these crimes and most importantly how the consequences have effected not only herself and her family but any victims of her crimes.  The defendant has accepted full responsibility for her actions and seeks to obtain full rehabilitation by successfully serving any sentence imposed by this Court.  After an analysis of the 3553(a) factors, the Court can achieve the purposes set out for sentencing through imposition of a sentence that is "minimully" sufficient but not greater than necessary.

### 1.     The Defendant's Motivation to Commit the Crime;

The need for retribution is measured by the nature and seriousness of the harm caused by the crime and the offenders degree of culpability in committing the crime.  In particular, the defendant's degree of intent, motive and likelihood to re-offend must be considered.  *Richard S. Frase, Excessive Prison Sentence, Punishment Goals, and the Eight Amendment: "Proportionality" Relative to What*?, 89 Minn. L. Rev. 571, 590 (February 2005).

A defendant's motive is highly relevant at the time of sentencing.  See *Wisconsin v. Mithcell*, 508 U.S. 476, 485 (1993); *United States v. Milne*, 384 F. Supp. 2d 1309, 1310-

11(E.D.Wis.2005)(granting a variance where the defendant did not take money out of greed or a desire to live a lavish lifestyle); *United States v. Ranum*, 353 F. Supp. 2d 984, 990 (E.D. Wis. 2005)(defendant did not act for personal gain or for improper personal gain of another). The evidence in this case supports a finding that the defendant's conduct was not motivated by greed or to live a lavish lifestyle.

The evidence is clear that the defendant did not profit from the fraudulent conduct or the defrauding of the IRS. The defendant did not share in any proceeds or the financial gain others obtained by defrauding the IRS with fraudulent tax refunds. At most, the evidence shows that the defendant received minimal benefit by receiving nominal amounts of money, such as gas money for her vehicle or money for the light bill. The receiving of any monies was not a consistent thing and did not occur over the duration of the conspiracy. The payment were minimal and seldom. The criminal conduct was not to allow the defendant to live a lavish lifestyle or provide for social opportunities at the expense of tax payer monies.

The evidence suggests the defendant was suffered from depression and low self esteem during the time these crimes were committed. It could be argued the defendant was seeking acceptance from those she conspired with to her detriment. The evidence does not suggest her intention was to unlawfully profit from tax payer monies. It was never the intent of the defendant to steal government funds for personal gain and / or to live a lavish lifestyle. The defendant accepts full responsibility for her actions however wants the court to understand her motivation in this offense was not for greed or personal gain.

   **D.      Ms. St. Simon is an Exceptionally Low Risk of Recidivism;**

The defendant stands before the Court a 31 year old woman with strong family ties and

support system. Salita has otherwise been a model citizen throughout her entire life never before violating the law, let alone finding herself in a position where she is facing a prison sentence. She has been gainfully employed for most of her adult life. Previous employment required Salita to handle PII without concern. Her employment at the PBCHD is the first time she has ever gotten herself in trouble within her employment. In light of her history and characteristics and strong family support the likelihood for Salita to re-offend is remarkably low.

Salita has persevered through a difficult childhood to achieve success and an education under circumstances that others may not. The defendant graduated from high school with some secondary education. The defendant was able to maintain consistent employment in an area where employment is hard to come by. She has otherwise been productive in both her professional and personal life.

Statistically, offenders with zero criminal history points or with a criminal history category of I, are those considered the least likely to re-offend. The defendant has no zero criminal history points. The defendant has further taken substantial steps in achieving rehabilitation by accepting responsibility, reflecting on her conduct, and beginning the rehabilitation process. There is no evidence of any drug or alcohol abuse.

When considering a minimally sufficient sentence to account for the need to protect the public from further crimes from this defendant, the Court should consider the statistically low risk of recidivism presented by Salita's history and characteristics. See, e.g. *United States v. Darway*, 255 Fed.Appx. 68, 73 (6th Cir. 2007); *United States v. Hamilton*, 323 Fed. Appx. 27, 31 (2d Cir. 2009)(the district court abused its discretion by not taking into account policy considerations with regard to age recidivism not included in the guidelines); *United States v.*

*Urbina*, slip op., 2009 WL 565485, *3 (E.D. Wis. Mar. 5, 2009)(considering low risk of recidivism indicated by defendant's lack of criminal record, positive work history and strong family ties).  The court should not be concerned with having to protect the community from future harm by this defendant and can be certain that she will never again be before this or any other court.

      **E.**      **Stigma of Being a Convicted Felon;**

      The seriousness of the offense has been partially mitigated by the punishment the defendant has already, and in the future will receive in light of the social stigma of her convicted felon status.  The defendant recognizes that, when accepting responsibility for her actions this resulted in her being classified as a convicted felon in a theft related matter.  She recognizes that the consequences of her actions have resulted in irreparable damage to her reputation and economic opportunities in the future.  This Court should consider Salita's loss of profession and reputation as a factor when viewing what a just punishment is.  See *United States v. Gaind*, 829 F. Supp. 669, 671 (S.D.N.Y. 1993)(granting a downward departure where the defendant was punished by the loss of his business); *United States v. Samaras*, 390 F. Supp. 2d 805, 809 (E.D. Wis 2005)(granting a variance in part because defendant lost a good public sector job as a result of his conviction).

      More often than not, a conviction record is viewed as conclusive evidence of bad character.  In this regard, there can be little question that a conviction for a felony coupled with a sentence of imprisonment tends to "gravely besmirch" a person's reputation.  As the Supreme Court noted, a felony is "as bad a word as you can give to a man, woman or thing." *United States v. Morissette*, 342 U.S. at 260, 72 S.Ct. 240. Convicted felons cannot vote, sit on a jury, serve in

public office, possess a firearm, obtain certain professional licenses, or obtain federal student loan assistance.  The label of "convicted felon" combined with a proclamation that the defendant is so vile that he or she must be separated from society, creates irreparable damage to the defendant's reputation and standing in the community.

 As Chief Justice Earl Warren wrote in his dissenting opinion in *Parker v. Ellis*, 362 U.S. 574, 593-94, 80 S.Ct. 909, 920, 4 L.Ed.2d 963 (1960); "Conviction of a felony imposes a Status upon a person which not only makes him vulnerable to future sanctions through new civil disability statutes, but which also seriously affects his or her reputation and economic opportunities." See also *Carafas v. LaValee*, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968) Overruling *Parker v. Ellis*, 362 U.S. 574, 80 S.Ct. 909, 4 L.Ed.2d 963 (1960).  Private employers often avoid hiring applicants with criminal records, and there are even more formidable barriers where public employment or entry into licensed occupations is sought.

There is no question that the consequences of the defendant's conduct will carry on with her beyond any sentence imposed by the Court.  Because of this, the defendant has effectively begun the rehabilitative process and effectively accepted the consequences of her actions.  No sentence imposed by this Court will take away the forever embarrassment the defendant has caused those closest to her and the forever stigma of being a convicted felon in a theft related offense.  The defendant recognizes that through her actions, she has not only placed certain barriers in her future but now more than ever recognizes that her actions will have a significant impact on her ability to provide financially for herself and her family in the future.

In accepting responsibility for her actions and the consequences that follow, Salita is still optimistic for her future.  Salita recognizes her conduct was in violation of the law and for that

she must be punished.  The defendant does however recognize that she is a hard working person who can overcome hardships and has the motivation and perseverance to achieve success and provide for herself and her family.

     **F.**    **Voluntary Surrender and Recommendation for Minimum Security Facility**;

     If, after consideration of all factors listed section § 3553(a), the Court deems a prison sentence appropriate, the defendant respectfully request that she be allowed to voluntarily surrender to the institution at which she is designated.  Salita has complied with all the conditions of her bond.  The defendant is not a risk of flight, nor a danger to the community and the requested extension of time for voluntary surrender will not have any effect on the administration of justice.

     Voluntary surrender will, however, have a significant impact on any scoring for designation purposes under the Security Designation and Custody Classification Manuel.  See P.S. 5100.06, Chapter 6, page 16.  This is so because a defendant's "Precommitment Status" – his / her  "status preceding, during, and following trial" is an integral part of the designation scoring process, and points are awarded for voluntary surrender when an "Offender was not escorted by a law enforcement officer to either the U.S. Marshals office or the place of confinement.  This applies only to post-sentencing voluntary surrender, and does not include cases where the offender surrendered to the U.S. Marshals Office on the same day as sentencing."

     The defendant also requests that should Court impose a term of imprisonment that the Court recommend the defendant be designated to serve any sentence of incarceration at the Federal Prison Camp in Miami, which is the minimum security institution closest to her

residence.  Such judicial recommendations are specifically contemplated in 18 USC § 3621(b)(4)(B), and BOP Program Statement 5100.08 says that the BOP will do what it can to accommodate such recommendation.

**CONCLUSION**

This appears to be one of those cases that reflect why district courts are given the discretion to impose a reasonable sentence.  A sentence that is tailored to the needs of the individual defendant as well as to reflect the seriousness of the offense.  The evidence in the case suggests the Court can achieve the purposes of sentencing with a minimally sufficient sentence and one that is sufficient but not greater than necessary.

Respectfully submitted;
*s/; Peter T. Patanzo*
Peter T. Patanzo, Esq.
Benjamin, Aaronson & Patanzo, PA
1 Financial Plaza, suite 1615
Fort Lauderdale, Florida 33394
(954) 779-1700 phone
(954) 779-1771 fax
ppatanzo@bellsouth.net
Counsel for Salita St. Simon

14

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been uploaded to

CM / ECF and served on all those associated with the electronic filing system this _____ day of

February, 2014.

_s/; Peter T. Patanzo_
Peter T. Patanzo, Esq.